|   |   |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 6:24-po-00201-HBK |
| Plaintiff, | ORDER DENYING CONSTRUED MOTION TO DISMISS[1] |
| v. | |
| EVELYN O. TSCHANNEN, | (Doc. No. 9, 13) |
| Defendant. | |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

On November 1, 2023 at 2210, Defendant Evelyn O. Tschannen was cited for violation of 36 C.F.R. § 2.10(b)(10)[2], camping outside of designated sites or areas in the "Wilderness Lot" at Yosemite National Park. (Doc. No. 1).

In two pleadings, each entitled "Trial Brief," filed September 3 and September 12, 2024, respectively, Defendant requests the Court to dismiss the violation on several grounds, including that she was not provided due process because due to the lack of any signage explicitly

---

[1] This matter is assigned to the undersigned consistent with Local Rule 302(b)(3).

[2] Defendant refers to violation of 36 C.F.R. 2.10(b)(1) as "a crime of moral turpitude, dishonesty, wickedness, and depravity." (Doc. No. 9 at 3). In fact, Class B misdemeanors, such as the violation for which Defendant was cited, are defined under federal law as petty offenses. *See* 18 U.S.C. § 19 (defining petty offenses as Class B and Class C misdemeanors and infractions). Nor does sleeping overnight in an undesignated area, which as discussed further below lacks any intent requirement, include any of the requisite elements of a crime of moral turpitude. *See Saavedra-Figueroa v. Holder*, 625 F.3d 621, 626 (9th Cir. 2010) ("[T]he federal generic definition of a CIMT is a crime involving fraud or conduct that (1) is vile, base, or depraved and (2) violates accepted moral standards."

prohibiting sleeping or camping in the Wilderness Lot where she was cited and she was not aware that camping in a vehicle was prohibited and thus lacked intent. The Court construes Defendant's pleadings as incorporating a motion to dismiss. For reasons set forth below, the Court denies Defendant's motion.

## LEGAL STANDARD

### A. Legal Standard

Pursuant to Rule 12 of the Federal Rules of Criminal Procedure, a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Rule 12(b)(3) specifies which motions must be made before trial and includes a motion to dismiss for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(v). A motion to dismiss is generally capable of determination if it "involves questions of law rather than fact." *United States v. Kelly*, 874 F.3d 1037, 1046 (9th Cir. 2017).

In ruling on a pretrial motion to dismiss, "the district court is bound by the four corners of the [charging document]." *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014); *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). The court "cannot consider evidence that does not appear on the face of the [charging document]." *Kelly*, 874 F.3d at 1046 (citing *Lyle*, 742 F.3d at 436; *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996)).

### B. Fifth Amendment Due Process

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. AMT. V. Due process, rather than being "a technical conception with a fixed content unrelated to time, place and circumstances[,] . . . is flexible and calls for such procedural protections as the particular situation demands." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (internal quotation marks and citation omitted); *see also Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 610 (1974) ("Due process of law guarantees no particular form of procedure; it protects substantial rights." (internal quotation marks omitted)).

In enacting statutes of general applicability, the Ninth Circuit summarized the government's obligation to provide notice to the public as follows:

> The government generally provides the level of notice required

> whenever it 'alters substantive rights through enactment of rules of general applicability . . . simply by enacting the statute, publishing it, and, to the extent the statute regulated private conduct, affording those within the statute's reach a reasonable opportunity both to familiarize themselves with the general requirements imposed and to comply with those requirements."

*Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 584 F.3d 1232, 1237 (9th Cir. 2009) (quoting *United States v. Locke*, 471 U.S. 84, 108 (1985)) (internal quotation marks omitted). "Despite the fact that most citizens do not keep abreast of every statutory development, that statutes are published and available to the public in the first place means that citizens can fairly be charged with constructive notice of the laws that bind them." *United States v. Vasarajs*, 908 F.2d 443, 448 (9th Cir. 1990).

Due process "require[s] that notice generally be given before the government may seize property." *Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008). There are, however, "numerous exceptions to this general rule: The government need not give notice in an emergency, nor if notice would defeat the entire point of the seizure, nor when the interest at stake is small relative to the burden that giving notice would impose." *Id*. at 1093–94; *see also Scofield*, 862 F.2d at 762–64 (holding that city was not required to provide advance notice before towing unregistered vehicles).

To determine whether a form of notice is constitutionally required, courts generally apply the balancing test articulated in *Mathews v. Eldridge*, which weighs the following: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used; (3) the probable value, if any, of additional or substitute procedural safeguards; and (4) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. 319, 335 (1976).

In *Sackman v. City of Los Angeles,* 2015 WL 13357951 (C.D. Cal. May 8, 2015), the plaintiff challenged a municipal ordinance under which a vehicle could be towed if parked in the same location for more than 72 hours. Plaintiff parked her van a block from her home before an extended out of town trip. *Id*. at 1. It was subsequently marked by a parking enforcement officer,

then issued a written citation the next day, and finally towed the day after. *Id*. No signs posted on the block where plaintiff parked her car, or anywhere else in the city, provided notice of the 72-hour policy. *Id*. The court found no due process violation from the lack of posted signs because plaintiff was given notice in the form of a written citation before the car was towed. *Id*. at 4. This alone was sufficient to bar plaintiff's due process claim and the court found it unnecessary to evaluate all of the *Eldridge* factors. *Id*. at 5. In an aside, however, the court noted that "the fiscal and administrative burdens to the City of posting these signs everywhere that the ordinance is applicable, i.e., every highway, street, and alley in Los Angeles" would be prohibitive, and implied that this factor would be a further basis to reject plaintiff's due process claims. *Sackman*, 2015 WL 13357951 at *5.

Here, Defendant's citation did not implicate any deprivation of property, only a monetary fine, which she was entitled to challenge in court. (*See* Doc. No. 1); *see also Missud v. California*, 2013 WL 450391, at *5 (N.D. Cal. Feb. 5, 2013) (noting that due process is satisfied when a ticket provides notice of the charges and the procedures for challenging the ticket, *aff'd*, 538 F. App'x 809 (9th Cir. 2013).

Thus, looking to the first *Eldridge* factor, the private interest affected by the official action in this case is a monetary penalty, a lesser interest than the deprivation of property and the attendant impact of losing one's vehicle, at issue in *Sackmann* and *Lone Star*. Looking to the second factor, the risk of erroneous deprivation under the procedure used is relatively minimal here, given that issuance of a citation for parking out of bounds is not subject to complex fact-finding. As to the third *Eldridge* factor, the probable value of additional or substitute procedural safeguards is difficult to discern without knowing how often visitors to the Park are confused by the lack of signage in certain parking areas, and are unexpectedly cited for camping out of bounds as a result. The fiscal and administrative burdens involved in posting signage everywhere in the Park that could conceivably be used for overnight parking cannot be determined with any precision, but presumably it would be substantial, given that the Park contains more than 200

miles of paved roads,³ with numerous pullouts and parking areas where visitors could potentially sleep in their vehicles. Defendant contends that because she was "given no visible, straightforward, explicit warning" that camping was prohibited in the Wilderness Lot, issuing her a citation for camping out of bounds violated her due process rights. (Doc. No. 9 at 7). However, as the court in *Sackman* explained, the law does not require the kind of repeated, visible, affirmative notice Defendant describes. *Sackman*, 2015 WL 13357951 at 4.

Further, the regulation provides that "[t]he superintendent may require permits, designate sites or areas, and establish conditions for camping." 36 C.F.R. § 2.10(a). "Camping outside of designated sites or areas is prohibited." 36 C.F.R. § 2.10(b)(10). "Camping" means, among other things, "the parking of a motor vehicle, motor home or trailer. . . for the apparent purpose of overnight occupancy." 36 C.F.R. § 1.4. Per the Yosemite Superintendents Compendium, a permit is required for all camping in Yosemite National Park. Further, the locations for permitted camping in non-wilderness areas are limited to designated campgrounds; in Yosemite Valley those locations are as follows: Upper Pines, Lower Pines, North Pines, Camp 4, and the backpackers campground. https://www.nps.gov/yose/learn/management/upload/yose-compendium.pdf.

Even assuming some specific notice was required beyond the long-standing public availability of 36 C.F.R. 2.10 (a) and (b), Defendant arguably did receive notice when Ranger Rippetoe gave attempted to give her a verbal advisement of the out of bounds camping violation. Only after Rippetoe announced himself twice with no response and then stated "Police, last chance, issue citation," did he then issue a written citation. (*See* Doc. No. 13 at 3).⁴ Apparently because she was in a deep sleep from taking her medication, Defendant was unable to respond in time to avoid a written citation. (Doc. No. 9 at 4).

Simply because a form of notice (in this case one not legally required) fails to reach a particular individual does not render the notice procedure per se inadequate. *See Sackmann,* 2015 WL 13357951 at *5, n. 7. On balance, the Court does not find that the lack of posted notice in the

---

³ htttps://www.nps.gov/yose/learn/management/statistics.htm
⁴ The Court refers to the page numbers in CM/ECF, rather than those in Plaintiff's document.

1  specific parking lot where Defendant was cited constituted a deprivation of due process.  As the
2  Ninth Circuit noted in *Glendale*, "[t]he government need not give notice . . . when the interest at
3  stake is small relative to the burden that giving notice would impose." *Id*. at 1093–94.  Here, the
4  fiscal and administrative burden of posting a notice everywhere a Park visitor could potentially
5  spend the night in their vehicle, or of requiring a park ranger to expend additional time to give a
6  potential violator time to respond to a verbal warning, far outweighs the interest at stake with the
7  occasional visitor who unknowingly violates a long-standing federal regulation.

       **C.  Fair Notice and Age Discrimination**

9         As a variation on her due process/fair notice argument, Defendant contends that posting
10  relevant information regarding national park camping regulations online fails to provide fair
11  notice.  She asserts that the text of 36 C.F.R. § 1.4, which defines "camping" under the relevant
12  regulations, "is only posted electronically and is hidden away from the majority of the public."
13  (Doc. No. 13 at 3).  Defendant's statement is not credible.  The Code of Federal Regulations is
14  widely disseminated in print in libraries around the country (if perhaps rarely consulted by
15  laypersons) and the claim that the cited provision is only posted online is simply not true.  Thus,
16  Defendant's claim of age or technological bias in the government's posting of regulations is
17  premised on mistaken facts and unpersuasive.

       **D.  Void for Vagueness**

19         A criminal statute is not vague if a reasonable person of ordinary intelligence would
20  understand what conduct the statute prohibits.  *See United States v. Iverson*, 162 F.3d 1015, 1021
21  (9th Cir. 1998).  A regulation is not unconstitutionally vague if that regulation is capable of a
22  limited interpretation such that "(1) ordinary people could understand what conduct is prohibited,
23  and (2) those enforcing the law are provided with clear standards to constrain them." *United*
24  *States v. Erickson*, 75 F.3d 470, 475 (9th Cir. 1996).

25         In passing, Defendant also contends that the regulation she was cited for violating was
26  unconstitutionally vague.  (Doc. No. 9 at 3-4; Doc. No. 13 at 3).  She notes that the citation she
27  received described her violation as "camping outside designated area[s]."  "However, when an
28  area is not posted, designation of an area is open to interpretation, vague," she argues.  (Doc. No.

9 at 3). "'Campground' and 'No Camping' are both equally proficient at designating an area." (*Id.*). As an aside, Defendant appears to contend that the language in her *citation* was vague, but this does not establish that the underlying regulation was vague or that a person of ordinary intelligence could not understand what conduct was prohibited by 36 C.F.R. § 2.10(b)(10). The language of 36 C.F.R. 2.10(b) is straightforward. It lists ten activities that are prohibited in National Parks, one of which is "Camping outside of designated sites or areas." 36 C.F.R. § 2.10(b)(10).

The Court does not find that a person of ordinary intelligence reading the regulation would be confused by what conduct is prohibited here: camping (which is further defined in 36 C.F.R. 1.4 to include "the parking of a motor vehicle, motor home or trailer . . . for the apparent purpose of overnight occupancy") outside of an area designated for camping. Defendant implies the regulation is vague because some areas, such as the Wilderness Lot, neither have a sign stating "Camping" or "No Camping." (Doc. No. 9 at 3-4). This is a variation on Defendant's notice argument, that absent a sign specifically prohibiting camping, she reasonably assumed that it was permitted. However, the clear implication of the regulation is that if an area or site is *not one affirmatively designated for camping* (i.e. "outside of designated sites or areas"), then camping there is prohibited. Thus, the Court is unpersuaded by Defendant's argument that the regulation was unconstitutionally vague, either generally or as applied to the Wilderness Lot.

**E. Mens Rea/Mistake of Law**

Defendant argues that her citation should be dismissed because at no time did she have a "guilty mind" nor was she aware that "her conduct was misconduct." (Doc. No. 13 at 4). To find the Defendant guilty, the Court is not required to find that the Defendant acted with any specific intent or *mens rea*. 36 C.F.R. § 2.10(b)(10) contains no *mens rea* requirement. *See United States v. Sears*, 2015 WL 13359437, at *6 (C.D. Cal. Apr. 16, 2015), aff'd sub nom, *United States v. Sears*, 652 F. App'x 553 (9th Cir. 2016) ("[T]he Court finds that 36 C.F.R. § 2.10(b)(10) does not include a *mens rea* element, and that Appellant's purported mistake of fact does not invalidate his conviction.").

As Defendant herself acknowledges, ignorance of the law is not a defense, and this case

does not present one of the very rare exceptions to that basic rule. *See United States v. Fierros*, 692 F.2d 1291, 1294 (9th Cir. 1982) (noting that exceptions to the rule exist only "where the defendant is ignorant of an independently determined legal status or condition that is one of the operative facts of the crime" or in "prosecution[s] under complex regulatory schemes that have the potential of snaring unwitting violators."). Thus, Defendant's ignorance as to the prohibition on camping outside designated areas in national parks is not a defense to the violation here.

### F. Conclusion

The Court is unpersuaded by Defendant's proffered arguments for dismissal of her case. While the Court understands that Defendant was not affirmatively advised through signage that camping was prohibited in the Wilderness Lot, the burden is not on the government to post notices of all prohibited activities at all locations where they may occur. *See Sackman*, 2015 WL 13357951 at *5; *see also Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 584 F.3d at 1237. The provisions pertaining to camping restrictions and how camping is defined in the National Parks, were contained in the publicly available Code of Federal Regulations and in the Yosemite Superintendent's Compendium. Defendant's failure to apprise herself of those provisions, either by consulting publicly available documents or by asking a park ranger, does not warrant dismissal of this citation.

Accordingly, the Court **ORDERS**:

Defendant's construed Motion to Dismiss (Doc. Nos. 9, 13) is **DENIED.**

Dated: September 16, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE